UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| THE KALENCOM CORPORATION | * | CIVIL ACTION NO. 17-5453 |
| --- | --- | --- |
| | * | |
| | * | SECTION: "A"(1) |
| VERSUS | * | |
| | * | JUDGE JAY C. ZAINEY |
| | * | |
| ANNE MARIE MONTAGNE SHULMAN | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

ORDER AND REASONS

Before the Court is the Motion to Compel filed by plaintiff Kalencom Corporation ("Kalencom"). (Rec. Doc. 37). For the following reasons, the Motion is DENIED.

Background

Kalencom manufacturers diaper bags, handbags, jewelry boxes and packaging, and infant products. Defendant Anne Marie Montagne Shulman ("Shulman") was employed for Kalencom for approximately two years starting in 1995, and thereafter she served as an independent contractor for Kalencom through various entities she owned or operated until February 17, 2016. Kalencom alleges that Shulman now serves as President and owner of Montagne Custom Packaging. Kalencom filed this lawsuit in Louisiana state court alleging that Shulman has taken its confidential and proprietary information and is using it for her own benefit, including by acquiring Kalencom's former customer The Neiman Marcus Group ("Neiman"). Kalencom asserts claims for unfair trade practices, tortious interference with a business relationship, violation of trade secrets law, breach of fiduciary duty, and seeks injunctive relief and damages.

Shulman filed a motion to dismiss, and the District Judge denied the motion except as to Kalencom's tortious interference with a business relationship claims, which were dismissed without prejudice. In her answer, Shulman alleges that she was not subject to any confidentiality,

1

non-disclosure, non-compete, or non-solicitation agreement. Shulman alleges that Kalencom's allegations are an attempt to prevent her from competing against it. Shulman alleges that Kalencom has unlawfully withheld payment to Mari Designs, LLC, a company through which Shulman provided services to Kalencom as an independent contractor. She alleges that Kalencom has made false and defamatory statements about her both in this lawsuit and to her former, current, or prospective customers and suppliers. Shulman filed Counterclaims for unfair trade practices, tortious interference with contract, and defamation. Kalencom filed a motion to dismiss the Counterclaims, which was granted in part. Shulman's defamation and tortious interference with contract claims were dismissed without prejudice.

Discovery Issue

The dispute before the Court at this time concerns discovery requests propounded by Kalencom on November 17, 2017. Kalencom categorizes the bulk of its requests into two groups, the "Neiman Requests" seeking information regarding Shulman's interactions with Neiman, including the names of her contacts with Neiman, her communications with Neiman, products sold to Neiman, and manufacturers discussed with Neiman, along with related communications. A second category is "Client Requests," seeking information regarding Shulman's interactions with clients and potential clients since she left Kalencom, including identification of all clients and potential clients she has worked with since February 2016, identification of Kalencom customers that she has obtained orders from for a company other than Kalencom since February 2016, and all communications with clients that were at one time Kalencom clients or Kalencom potential clients since February 2016. A third group of interrogatories and document requests concern information related to Shulman's time working with Kalencom, including identification and production of information she had access to while working for Kalencom for 20 years,

communications with clients and potential clients while she was working for Kalencom, and a description of all training she received while working for Kalencom. A last group of requests concerns her employers and job duties since leaving Kalencom and associated documents.

Shulman responds that the Neiman Requests and Client Requests must be limited in scope to the allegedly misappropriated trade secrets and confidential information, which Kalencom must be required to identify. Shulman further argues that Kalencom should be required to show at least some evidence of misappropriation before it is allowed to "pillage through Shulman's business communications and strategies with her new employer." With regards to the discovery requests related to her employment with Kalencom, she argues that the requests are overbroad because they apply to her more than 20 years of working with Kalencom, some extend to communications that are not related to Kalencom, and she adds that she returned 30 cartons of documents to Kalencom when their relationship ended and did not keep copies of any of that information. As to the requests related to her employers and job duties since leaving Kalencom, Shulman insists no documents related to her interrogatory responses exist.

<u>Law and Analysis</u>

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). Of note, with the 2015 amendment to Rule 26, it is now clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." <u>Id.</u> In assessing proportionality of discovery, the following should be considered: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. The advisory committee comments to the 2015 amendment to Rule 26 make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information sought is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Id. advisory committee comments to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id

2. *Discovery in a Trade Secret Case*

Shulman argues that Kalencom must be required to identify the allegedly misappropriated trade secrets and proprietary and confidential information so that its discovery requests can be limited in scope. It insists that courts routinely require "pre-discovery identification" of trade secrets to discourage meritless trade secrets claims and abusive discovery into the trade secrets of a competitor. For example, a district court in Texas surveyed cases from other circuits and concluded that "[t]he growing consensus seems to be in favor of requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue." StoneEagle Servs., Inc. v. Valentine, No. 3:12-CV-1687-P, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013); see DeRubeis v. Witten Techs., Inc., 244 F.R.D. 676, 681 (N.D. Ga. 2007) (requiring that prior to obtaining discovery regarding its trade secret claims, the former employer would "first identify with 'reasonable particularity' those trade secrets it believes to be at issue"); see also United Servs. Auto. Ass'n v. Mitek Sys., Inc., 289 F.R.D. 244, 248–49 (W.D.

Tex. 2013), aff'd, No. CIV.A. SA-12-CA-282, 2013 WL 1867417 (W.D. Tex. Apr. 24, 2013) (granting defendant's motion for pre-discovery identification of trade secrets and ordering the plaintiff to identify each alleged trade secret it claimed the defendant misappropriated); Powerweb Energy, Inc. v. Hubbell Lighting, Inc., No. 3:12CV220 WWE, 2012 WL 3113162, at *2 (D. Conn. July 31, 2012) (ordering the plaintiff "to provide defendants with a description that defines with reasonable specificity the alleged trade secrets which form the basis of its misappropriation claim," with the defendants to respond to plaintiff's discovery requests fifteen days afterwards); Switch Commc'ns Grp. v. Ballard, No. 2:11-CV-00285-KJD, 2012 WL 2342929, at *6 (D. Nev. June 19, 2012) (holding that the defendant would not be required to respond to the plaintiff's discovery requests until the plaintiff "describes its alleged trade secrets with reasonable particularity"); Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc., No. 3:08-CV-539-RLV-DCK, 2009 WL 4429156, at *5 (W.D.N.C. Nov. 25, 2009) (denying the plaintiff's motion to compel and holding that after the plaintiff "has sufficiently identified the trade secrets allegedly misappropriated," it would be "free to submit more narrowly drawn document requests and interrogatories"); AutoMed Techs., Inc. v. Eller, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (holding that in a lawsuit against former employees, the former employer would be required to "particularize which of its secrets were allegedly misappropriated before [the court would] compel [the employer of the plaintiff's former employees] to reveal its own").

The court in DeRubeis described the policy considerations it weighed before deciding to order the former employer to identify its allegedly misappropriated trade secrets. Policies favoring discovery prior to identification of trade secrets include "plaintiff's broad right to discovery under the Federal Rules of Civil Procedure;" "the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets

5

have been misappropriated until it receives discovery on how the defendant is operating;" and "if the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a 'Catch–22' . . . '[i]f the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing.'" DeRubeis, 244 F.R.D. at 680 (quoting Kevin R. Casey, Identification of Trade Secrets During Discovery: Timing and Specificity, 24 AIPLA Q.J. 191, 202 (1996)). Policies favoring identification of allegedly misappropriated trade secrets prior to discovery include: "if discovery on the defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as 'fishing expeditions' to discover the trade secrets of a competitor;" "until the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant;" "it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated;" and "requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives." Id. at 680-81.

   *3. Kalencom's Discovery Requests: Neiman Requests and Client Requests*

The Court finds that the same policies considered by the court in DuRebeis as favoring identification of trade secrets prior to discovery are at play here. Having left her relationship with Kalencom, Shulman is now competing with it. There is no dispute that Shulman is not barred from doing so by any non-solicitation or non-compete agreement or otherwise. Instead, Kalencom alleges that Shulman was obligated to maintain confidentially information she obtained while working with Kalencom and that she is using that information now in violation of such obligation. Kalencom seeks to use the discovery process to obtain, for example, all of Shulman's

communications with her present clients if any of them were actual or prospective Kalencom clients. Such intrusive discovery into the communications of a competitor amounts to a fishing expedition in cases where, as here, it is unclear what information Shulman is alleged to be wrongfully using. In part, this problem stems from the generic laundry list of "confidential and proprietary" information alleged in Kalencom's complaint. But the problem also comes from the fact that Kalencom's basis for alleging a confidentiality obligation is so vague.

Kalencom's Complaint lists the following confidential and proprietary information that Shulman "came to know" while working for Kalencom:

> manufacturing information, client lists, property lists, business systems, future plans, research, development data, methods of developing pricing, pricing histories, information related to bases for pricing, financial information regarding clients and Kalencom, personal information regarding clients, suppliers, and company personnel such as sales, accounts receivable, inventory, number of personnel, and other proprietary and confidential information and trade secrets.

(Rec. Doc. 1-1, at 3). Kalencom also lists the following confidential and proprietary information, which it alleges Shulman was obligated to maintain confidentially: "books of accounts, contract cards, orders, current and closed-out accounts, customer lists, route lists, prospect lists or lists of potential or actual customers, business procedures, profits, personnel and pay records, [and] company financial information . . . ." Id. at 4. Kalencom alleges that with regard to Neiman, Shulman was provided with or knew the "proprietary processes involved in manufacturing, selling and delivering products Neiman purchased [and] proprietary pricing structure and business dealings between the companies." Id. at 3. Kalencom alleges that Shulman has used Kalencom's confidential and proprietary information, including "manufacturing and shipping processes, specifications of Neiman orders, the contacts at Neiman who worked with Kalencom, the relationship between the parties, and the pricing of products" to obtain an order and account from Neiman for her present employer. Id. at 4. Kalencom alleges "Shulman has other confidential

information of Kalencom's, including information regarding many other clients, which on information and belief she is using and intends to continue using for her own benefit . . . ." Id. at 5. No further identification of this "other confidential information" is provided in the Complaint.

As the basis for Shulman's obligation to maintain the listed information confidentially, Kalencom alleges that Shulman "knew" the information was confidential and proprietary and that she was subject to "rules applicable to those working for Kalencom." Id. at 3. As pointed out in Shulman's motion for summary judgment, no writing signed by Shulman agreeing to maintain any Kalencom information confidentially has been produced. Nor has Kalencom alleged or elsewhere explained what efforts it has taken to maintain the listed information confidentially or to make clear to employees what information is to be kept secret. Had Kalencom asserted the basis for the purported confidentiality obligation with more specificity, it might be possible to deduce what confidential information is at issue here.

The Court explored this issue extensively with counsel for Kalencom at oral argument on the motion to compel. Counsel insisted that every item listed in the complaint is indeed a trade secret or confidential and proprietary information that Shulman was obligated to maintain in confidence. Citing an email sent by Shulman after she left Kalencom to a customer she had worked with while she was working with Kalencom, Counsel argued that Kalencom has reason to believe that Shulman has been using their proprietary information. In that email, Shulman solicited the customer's business on behalf of her new business venture and explained that with her new company, she would be keeping "partnerships with all of our previous raw material suppliers and the very same factories." Yet at oral argument, Kalencom was not prepared to limit the allegedly misappropriated confidential information to information implicated by the statements in the email.

Counsel also insisted that it is too early to demand Kalencom come forward with evidence that the information it alleges to be confidential is properly classified as a trade secret or confidential and proprietary information. The Court asked how Shulman's departure and solicitation of Kalencom's former clients was any different from an associate leaving a law firm and soliciting former clients. Counsel argued that the associate's knowledge of a client's billing and expert preferences is not confidential. In contrast, counsel argued, Kalencom's jewelry boxes have special designs which are inherently confidential and which Shulman cannot take with her to her new employer. This argument highlights the problem with Kalencom's list of proprietary information. The Complaint does not list "jewelry box designs from 2016 manufacturing season" or even just "designs." To the extent Kalencom maintains that Shulman has misappropriated its designs, how can Shulman defend the claim or provide relevant discovery responses if she is not on notice of it?

While Kalencom's allegations were sufficient to survive a motion to dismiss, they are not sufficient to warrant the type of discovery it now seeks to obtain from Shulman. Its vast and generic description of allegedly misappropriated confidential information makes it impossible to narrow its discovery requests to relevant information. As written, Kalencom's discovery requests would necessarily yield voluminous information that is completely irrelevant to its claims. For example, Kalencom seeks "all documents and communications related to what you discussed with and presented to individuals at Neiman to obtain the Neiman account, to sell/attempt to sell products related to the Neiman account, and/or to service/attempt to service the Neiman account, for an entity other than Kalencom." (Rec. Doc. 37, 3, at 29, Request for Production 20). It asks Shulman to identify "all of the clients, potential clients, businesses, and individuals that you have worked with or for since February 2016." Id. at 17, Interrogatory No. 10. It then appears to request all

associated documents and communications. Id. at 25, Request for Production 10 ("Produce all documents and communications described or inquired about in Interrogatory No. 10."). Kalencom must make an attempt to identify the allegedly misappropriated confidential and proprietary information and/or trade secrets, and must then narrow its discovery requests to seek information related to Shulman's purported use of that information. Importantly, the Court cannot condone far reaching discovery in a lawsuit by a plaintiff who is unable to identify the confidential information that has allegedly been misappropriated. To do so would allow a plaintiff to "mold its cause of action around the discovery it receives." See DeRubeis, 244 F.R.D. at 680-81.

In reply, Kalencom argues that its discovery is also relevant to Shulman's counterclaims. But in her counterclaim, Shulman alleges that Kalencom has made false and defamatory statements about Shulman. It is unclear how Shulman's communications with her clients would be relevant to proving whether such statements were made by Kalencom. Kalencom argues that Shulman's client communications are relevant to her claim that her business relationships were disrupted. While this might make some of Shulman's client communications relevant, Kalencom's requests are without limit. The Court adds that this basis for relevance was raised by Kalencom for the first time in its reply memorandum, which was filed after business hours the night before oral argument. Shulman has not had the opportunity to respond.

In reply, Kalencom also attempts to distinguish cases like those cited by the Court above and by Shulman in her opposition memorandum. Kalencom insists that requiring trade secrets be identified prior to discovery does not apply where the opposing party is an individual rather than a corporation. The cases string cited by the Court above include several examples where a former employer in a lawsuit with its former employees was required to identify the allegedly misappropriated information before discovery could proceed. E.g., DeRubeis, 244 F.R.D. at 678;

Switch Commc'ns, 2012 WL 2342929, at *1; AutoMed Techs., 160 F. Supp. 2d at 918. The fact that Shulman's new employer or whatever entity she is working through as an independent contractor has not been joined to this lawsuit does not change the course of discovery in this instance. Kalencom also argues that this case is not as complex as the Stone Eagle case, where plaintiffs alleged that the defendants had used plaintiffs' confidential information and trade secrets to develop a software and process similar to the plaintiffs' patented software. 2013 WL 9554563, at *1. It is the breadth of Kalencom's alleged confidential and proprietary information that makes the concerns raised by the court in Stone Eagle applicable here, too. The court there explained that:

> By requiring Plaintiffs to provide a list of trade secrets, the Court and Defendants will be able to more accurately determine relevant responses and appropriate objections. Plaintiffs will not be required to sift through mounds of irrelevant information produced by Defendants because they were uncertain as to what information was relevant. And Defendants will not be required to waste time guessing at the basis of Plaintiffs' claims.

Id. at 3. The court in Stone Eagle found it would be useful for the plaintiffs to not only identify the allegedly misappropriated trade secrets with reasonable particularity, but to identify them in a manner such that "the reader understands how each such claim differs from public domain information." In doing so, the court explained, it would be possible to identify that information which was not a trade secret, thereby eliminating those alleged trade secrets. Similarly here, the Court finds that not only must Kalencom identify the allegedly misappropriated trade secrets and confidential and proprietary information with reasonable particularity, but it must describe each item of information in a manner that makes clear Kalencom's basis for alleging such information is indeed confidential and not publicly available or kept in such a manner that there was no expectation of confidentiality.

Accordingly, as to the Neiman Requests and the Client Requests, Kalencom's Motion to Compel is denied. Kalencom must first identify the allegedly misappropriated confidential and

11

proprietary information and trade secrets with reasonable particularity. Kalencom should only include information on the list if it can show that the information was confidential and proprietary, and if it has a reasonable basis to believe that Shulman has used or is using the information since leaving her work with Kalencom. Therefore, for each item of allegedly misappropriated confidential and proprietary information, Kalencom shall describe the basis for its expectation of confidentiality as to that specific piece of information.[1] It shall provide its list to Shulman within 30 days. The Court notes that the list may be supplemented if Kalencom later determines that additional information was misappropriated. Once Kalencom has provided the list to Shulman, Kalencom may revise its discovery requests such that they are tailored to the information in the list.

4. *Other Requests*

Kalencom's remaining requests seek information related to Shulman's time working with Kalencom and information about her current employment relationship. At oral argument, Kalencom agreed to drop Interrogatory 1.

Interrogatory 5 seeks all information she "saw, obtained, or had access to" while working for Kalencom. This request is overly broad. Shulman seems to say that all Kalencom information she had, other than communications conducted on her personal email or telephone, was returned to Kalencom. Within 7 days, Shulman shall deliver a certification explaining (1) whether she has delivered to Kalencom all Kalencom information in her possession, and if not, what information she has not delivered, and (2) whether she retains copies of any Kalencom information. Any further

---

[1] The Court notes that Kalencom is not being required to come forward with evidence to support the basis for confidentiality. However, Kalencom must describe that basis with sufficient particularity that Shulman can mount her defense.

issues that arise following this certification may be raised before the Court by separate motion or request for a status conference.

Request for Production 8 seeks all of Shulman's communications with clients while working for Kalencom. In reply, Kalencom clarifies that this request is intended to be limited to communications related to Kalencom. Even with this limit, the Court finds that the request is too broad in scope: it covers a time period of over 20 years and is unlimited in subject matter. While some such communications may be relevant to this litigation, given the volume of materials sought, the Court must deny the motion to compel as to Request for Production 8, and subject this request to the same limits as imposed for the Neiman Requests and the Client Requests: Kalencom may revise this request to limit its scope after it has identified the allegedly misappropriated trade secrets and confidential and proprietary information with reasonable particularity.

Request for Production 9 seeks documents and communications described in an interrogatory requesting a listing of all clients, potential clients, businesses, and individuals that Shulman worked with while working for Kalencom. Shulman objected to the interrogatory as unduly burdensome and she stated that Kalencom is in possession of the requested information. The interrogatory is indeed overbroad. It fails to provide any reasonable time limit. It is not limited to relevant information (for example, a limitation to a listing of individuals that Shulman worked with at Kalencom and with whom she has, since leaving Kalencom, discussed confidential Kalencom information (which must first be identified with reasonable particularity)). The interrogatory may be revised by Kalencom after it has identified the allegedly misappropriated trade secrets and confidential and proprietary information. As to the Request for Production that was specifically challenged by Kalencom's motion, the motion to compel is denied because at this

13

time, the underlying interrogatory and response do not describe or inquire about any documents or communications.

Similarly, Requests for Production 3 and 4 seek documents and communications "described or inquired about" in Interrogatories 3 and 4, respectively. Interrogatory 3 asks for a listing of all of Shulman's employers since she left Kalencom. She provided a response that does not appear to be challenged. Neither the interrogatory nor response to describe or inquire about any documents. As to Request for Production 3, the motion to compel is denied.

Interrogatory 4 asks Shulman to describe her job titles, duties, and responsibilities since she stopped working for Kalencom. Shulman provided a response that does not appear to be challenged. Neither the interrogatory nor Shulman's response describe or inquire about any documents or communications. Shulman has also represented that there are no written contracts or job descriptions. As to Request for Production 4, the motion to compel is denied.

The Court notes that Kalencom characterizes Requests for Production 3 and 4 as seeking documents and communications related to Shulman's employment since she left Kalencom. The Court disagrees that the requests can be interpreted in this manner. Moreover, such a request, even if it had been written as now described by Kalencom, is overbroad. Such a request must be narrowed to seek documents and communications that might reflect use of the allegedly misappropriated trade secrets and confidential and proprietary information, which Kalencom must first identify with reasonable particularity.

Conclusion

Accordingly, for the foregoing reasons, Kalencom's Motion to Compel is DENIED.

IT IS ORDERED that within 7 days, Shulman shall deliver a certification explaining (1) whether she has delivered to Kalencom all Kalencom information in her possession, and if not,

what information she has not delivered, and (2) whether she retains copies of any Kalencom information.

IT IS FURTHER ORDERED that within 30 days, Kalencom shall produce to Shulman a list identifying the allegedly misappropriated confidential and proprietary information and trade secrets with reasonable particularity and for each item of allegedly misappropriated confidential and proprietary information, describing the basis for its expectation of confidentiality as to that specific piece of information.

New Orleans, Louisiana, this 17th day of April, 2018.

Janis van Meerveld<br>United States Magistrate Judge